**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

NAKIRI S. CISERO,

        Plaintiff,

v.                                        Case No. 3:05-cv-1105-J-32JRK

WAL-MART STORES EAST, L.P., et al.,

        Defendants.

**ORDER[1]**

This case comes before the Court on Defendants Wal-Mart Stores East, L.P. (Wal-Mart), Daryl Rieli, Larry Dollar, Ralph Chapman and Mia Davis' Motion for Summary Judgment (Doc. 131) and Plaintiff Nakiri S. Cisero's Response thereto. (Doc. 137.) The Court heard oral argument on March 18, 2008. (Doc. 139.)

**Facts**

Plaintiff Nakiri Cisero is an African-American female. She began working for Wal-Mart in early 2003 through the company's management training program. (Doc. 134-3 at 11.) After completing that program in August 2003, Plaintiff was placed as an Assistant Manager in the Bakery Department of Store # 1077 in Tallahassee. (Id. at 22-23, 30.) The record does not indicate that Plaintiff had any discipline problems at this store and she does not report suffering any racial discrimination there.

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

However, Plaintiff was dissatisfied and felt that staffing problems at Store # 1077 created an environment where she could not learn because she "was pulled in ten different directions on a daily basis." (Id. at 23.)

In October 2003, Plaintiff requested a transfer from store # 1077; that request was granted and she was transferred to Store # 1223 in Tallahassee. (Id. at 23-25.) Her title and job duties remained the same in the new store. Store manager Larry Dollar and co-manager Ralph Chapman, defendants in this action, supervised Plaintiff at Store # 1223. See Docs. 131-6, 131-8. Dollar states that after Plaintiff began work at the store, they received a number of complaints from workers supervised by Plaintiff "complaining that she was abusive and disrespectful in the way she treated them." (Doc. 131-8 at 1.) Chapman expands upon these complaints, which are attached to his affidavit. See Doc. 131-7. While Plaintiff contends that these complaints were solicited by her managers, she presents no evidence in support of this assertion;[2] Dollar and Chapman both state in their affidavits that "[w]hen Associates came to members of management to complain verbally about Cisero, they were asked to reduce their complaints to writing. I never solicited these complaints." (Docs. 131-6, 131-8.)

The conflict at Store # 1223 led to the managers attempting various forms of "coaching" to improve Plaintiff's performance. The managers met with Plaintiff

---

[2] All of the affidavits submitted by Plaintiff in opposition to Defendants' Motion for summary judgment are from Jacksonville Wal-Mart employees; none speak to her time in Tallahassee.

"multiple times while she was at Store # 1223 to discuss the Associates' complaints in an attempt to improve [her] conduct as Assistant Manager." (Doc. 131-6 at 4.) When these informal methods did not have the desired effect, the managers turned to more formal methods of discipline, including an associates "Grassroots" meeting to "clear the air over bakery department conflict," a "Verbal Coaching" on December 22, 2003 incorporating the results of the Grassroots meeting and a "below expectations" annual evaluation.[3] (Doc. 134-3 at 28, 32.) Plaintiff requested another transfer; that request was eventually granted and Plaintiff was transferred to Store #1173 in Jacksonville, Florida. (Id. at 30, 40, 46.)

Plaintiff began work at the Jacksonville store on April 11, 2004 as an Assistant Manager over General Merchandise. (Id. at 46.) Defendant Daryl Rieli was the Store Manager of Store # 1173. (Id. at 48.) Rieli states in his affidavit that he began receiving complaints from associates about Plaintiff's performance about one month after she began working in Jacksonville. (Doc. 131-9 at 1.) Plaintiff contends that these complaints were solicited by Rieli, who was out to get her for racially motivated reasons. See generally Doc. 137. Like Dollar and Chapman, Rieli states "[w]hen Associates came to members of management to complain verbally about Cisero, they were asked to reduce their complaints to writing. I never solicited these complaints." (Doc. 131-9 at 1.) Based upon these complaints, Rieli and Co-Manager Sandra

---

[3] Plaintiff was also issued a "Written Coaching" by Chapman at store # 1223 but the decision to issue that coaching was overturned on appeal by Wal-Mart Regional Personnel Manager Aaron Gillingham. (Doc. 134-3 at 35-37.)

-3-

Panichello issued a Written Coaching to Plaintiff on June 9, 2004. (Doc. 134-2 at 4-5, Doc. 134-3 at 48.)

On July 28, 2004,[4] Plaintiff filed two charges of race discrimination with the Equal Employment Opportunity Commission. (Doc. 134-3 at 57; Doc. 139-2) The first charge alleged that, while working in Tallahassee Store # 1223, Plaintiff had been discriminated against on account of race when she was issued a Written Coaching in December 2003 and a "below standards" evaluation in February 2004. (Id.) The second charge alleged that while working in Jacksonville Store # 1173 Plaintiff was discriminated against on account of race when she was issued a Written Coaching in June 2004. (Id.) During the pendency of these charges and Wal-Mart's internal investigation, management continued to receive a high volume of complaints about Plaintiff's behavior. When an informal meeting on September 2, 2004 with District Manager David Hanania did not improve the situation, Rieli and Panicello, under the guidance of Hanania, issued Plaintiff a Decision-Making Day Coaching on October 15, 2004. (Docs. 131-9, 131-11, 134-3 at 73.) Plaintiff began taking medical leave from her position at Wal-Mart because of stress on November 13, 2004. (Doc. 134-3 at 77, Doc. 134-2 at 11.) She resigned her employment on February 10, 2005, after her paid medical leave time had expired. (Doc. 134-3 at 79; Doc. 134-2 at 18-21.)

---

[4] In the Motion for Summary Judgment, Defendants erroneously claimed that these EEOC complaints were made June 28, 2004. (Doc. 131.) However, upon request of the Court, Plaintiff provided the actual complaint forms at the motion hearing. Those complaints are attached to the minutes as an exhibit and are dated July 28, 2004. See Doc. 139.

-4-

## II. Legal Standard

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in that party's favor. Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005).

A plaintiff can establish a prima facie case of discrimination using direct evidence of discrimination or by relying on circumstantial evidence to prove discriminatory intent. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). To establish a prima facie case using direct evidence, a plaintiff must present "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption; in other words, "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate ... constitute direct evidence." Id. In the absence

of direct evidence, Plaintiff must establish a prima facie case on her discrimination claims pursuant to McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), using circumstantial evidence.

## III. Discussion

In her Second Amended Complaint, Plaintiff alleges that Wal-Mart is liable based on race discrimination and retaliation under Title VII and the Florida Civil Rights Act. (Doc. 82 ¶¶ 1-3, 9.) Plaintiff also alleges that employees Larry Dollar, Ralph Chapman and Daryl Rieli are liable based on retaliation pursuant to Section 1981. (Id. at ¶¶ 63-71, 72-77, 202-211.) Finally, Plaintiff alleges that Mia Davis is liable based on common law assault and battery, a claim this Court has jurisdiction over pursuant to 28 U.S.C. § 1367. (Id. at ¶¶ 31-32, 269-270, Doc. 78.)

### a. Title VII and FCRA Race Discrimination Claims

Examining the complaint in light of her pro se status, Plaintiff alleges that Wal-Mart violated Title VII and FCRA by discriminating against her based on race. The analysis used for a FCRA claim is the same as that used for a Title VII claim. Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998). Count II of the Complaint alleges race discrimination based on events occurring at the Tallahassee Wal-Mart store # 1223 while Count IV of the Complaint alleges the same claims based on events occurring at the Jacksonville Wal-Mart.

This case is the relatively rare example of a discrimination case that presents direct evidence of discrimination. Direct evidence is "evidence which reflects 'a

discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998))  In support of her claim, Plaintiff has produced an affidavit of former Jacksonville Wal-Mart employee Robert Sieke. (Doc. 137-2.)  Sieke states that Plaintiff's supervisor in Jacksonville, Daryl Reili, made the following comment to him prior to Plaintiff's arrival in Jacksonville: "I hate niggers and I'm going to do everything I can to get rid of that bitch Nakiri."  (Id.)  This type of blatant remark is direct evidence of discrimination under Eleventh Circuit precedent. See e.g. Earley v. Champion Intern. Corp., 907 F.2d 1077, 1083 (11th Cir. 1990) ("One example of direct evidence would be a management memorandum saying, 'Fire Earley-he is too old'").  If believed by the jury, Rieli's comments could establish without resort to inference that any future adverse employment action approved by Reili would be based on Plaintiff's race.[5]  Additionally, those comments could provide circumstantial evidence of discrimination applicable to Plaintiff's time in Tallahassee because Rieli made the comments prior to Plaintiff's Jacksonville start date. Accordingly, the Court should use the McDonnell-Douglas burden shifting analysis as to Count II and summary judgment should be denied on Count IV if Plaintiff did in fact suffer an adverse employment action within the meaning of Title VII. The Court

---

[5]  It should be noted that even if the jury credits the direct evidence, the case is not over. "In the face of direct evidence, an employer must prove that the same employment decision would have been made absent any discriminatory intent."  Carter, 870 F.2d at 572.

will analyze this element in relation to Plaintiff's two counts of discrimination in turn.

First, summary judgment is due to be granted on Count II because Plaintiff did not suffer any adverse employment action while working in Store # 1223 in Tallahassee. To establish an adverse employment action under Title VII, Plaintiff must show the she suffered "a serious and material change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, 245 F.3d 121, 1239 (11th Cir. 2001.) While the Supreme Court recently changed the standard for what constitutes an adverse employment action in the retaliation context, the standard under the substantive portion of Title VII has not changed. See Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 2412-13 (2006) (holding that under Title VII, "the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment"). In her EEOC complaints, Plaintiff claimed that her negative evaluation and written coachings were adverse employment actions. See Doc. 139. However, those actions are not legally sufficient under the substantive portion of Title VII because they did not cause any change in the terms, conditions, or privileges of her employment. See White, 126 S.Ct. 2412-13. Accordingly, the Court will grant Summary Judgment on Count II of Plaintiff's Second Amended Complaint.

However, the Court cannot grant summary judgment on Count IV because disputed issues of material fact exist as to whether Plaintiff suffered an adverse employment action during her time in Jacksonville. The difference between Plaintiff's

experience at Store # 1223 in Tallahassee and her experience in Jacksonville is that Plaintiff tendered her resignation from the company during her tenure in Jacksonville. While a voluntary resignation is certainly not an adverse employment action under Title VII, Plaintiff asserts that she was constructively discharged from her position at the Jacksonville Wal-Mart. If proven, constructive discharge can satisfy Title VII's requirement of an adverse employment action. See Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993). To show constructive discharge, Plaintiff must "demonstrate that working conditions were so intolerable that a reasonable person in [her] position would have been compelled to resign." Durley v. APAC, Inc., 236 F.3d 651, 658 (11th Cir. 2000).

The standard for constructive discharge is high in the Eleventh Circuit and the facts alleged by Plaintiff present a close case. Nevertheless, the Court finds that there is a jury question on this issue that precludes summary judgment. Through her papers, Plaintiff describes the Jacksonville Wal-Mart as a racially charged working environment where Rieli took action against her because of her race and attempted to "get rid" of her by soliciting Plaintiff's colleagues to file illegitimate and baseless complaints in an attempt to build a file and get her fired. Plaintiff has supported this argument with record facts in the form of affidavits from former Wal-Mart employees, most notably Sieke. See Doc. 137-2. Defendants claimed at the hearing on this motion that Sieke's claims were not credible based on unspecified evidence not contained in the record. However, Defendants did not introduce Sieke's deposition

(or any deposition other than Plaintiff's) into the record in support of the motion for summary judgment. On this record, the credibility of Plaintiff's affiants is a matter for the jury. Taking the facts in the light most favorable to Plaintiff, summary judgment should be denied on Plaintiff's Title VII and FCRA claims in Count IV.

### b. Retaliation claims against Wal-Mart

Plaintiff also alleges that Wal-Mart retaliated against her in violation of Title VII and FCRA. Similar to her discrimination claims, Plaintiff separates the allegations into two counts - Count I addresses events occurring at the Tallahassee Wal-Mart Store # 1223 while Count III address events at the Jacksonville Wal-Mart.

To establish a prima facie case of retaliation, Plaintiff must prove that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1328 (11th Cir. 1998). Plaintiff claims she was retaliated against at Store # 1223 in Tallahassee (Doc. 82); however, the record shows that she did not engage in any statutorily protected activity until July 28, 2004, months after leaving that store. (Doc. 139.) It is true that Title VII can protect informal complaints to company supervisors as well as formal EEOC charges. See Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 716 n.2 (11th Cir. 2002). However, Plaintiff admits in her deposition that she did not complain of race discrimination until after she left Tallahassee and started working in Jacksonville. (Doc. 137-4 at 53.) Accordingly, the Court will grant summary judgment on Count I

because Plaintiff did not engage in any protected activity prior to leaving Store # 1223.

The Court cannot grant summary judgment on Count III because there exist disputed questions of material fact as to those claims. Specifically, Rieli's comments to Sieke and the close temporal proximity between Plaintiff's EEOC complaints and her Decision-Making Day coaching[6] could allow a reasonable jury to find a causal relationship between Plaintiff's protected activity and an adverse employment action. Additionally, Rieli's comments could effectively rebut any legitimate, non-discriminatory reason proffered by Wal-Mart in relation to Plaintiff's discipline. Accordingly, summary judgment on Count III will be denied.

### c. Plaintiff's section 1981 claims against her individual supervisors

In addition to her discrimination and retaliation suits under Title VII against Wal-Mart, Plaintiff has also sued her former supervisors under 42 U.S.C. § 1981, alleging that they retaliated against her because of her complaints of discrimination. "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship . . .." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006). Individual supervisors can be held liable under § 1981 if they have the power to make

---

[6] Defendant has challenged whether the Decision-Making Day coaching is "materially adverse" under the White standard. The Court finds that genuine issues of material fact exist on this element that preclude summary judgment. When viewed in the light most favorable to Plaintiff, this type of "last chance" discipline presents a jury question as to whether it would dissuade a reasonable employee from making or supporting a charge of discrimination. See White, 126 S.Ct. at 2415.

or recommend employment actions against the employee. See e.g. Leige v. Capitol Chevrolet, Inc., 895 F.Supp 289, 293 (M.D. Ala. 1995). The Eleventh Circuit has found that § 1981 supports a claim of retaliation based on race discrimination; however, the elements of such a claim are unsettled in some circumstances. See Tucker v. Talladega City Sch., 171 Fed. Appx. 289, 295 (11th Cir. 2006) (unpublished). While most courts in this circuit have analyzed § 1981 claims in the same way Title VII claims are analyzed, Plaintiff asserts that different elements should be used to establish a prima facie case under § 1981 in her case. (Doc. 137-9 at 22.)  While perhaps true in situations where an employee's contract is infringed because of complaints made regarding the racial discrimination suffered by another person, it seems that the Title VII analysis is appropriate here because Plaintiff is claiming that her supervisors impaired her contractual relationship with Wal-Mart on the basis of her own race, not the race of a third-party. See Andrews v. Lakeshore Rehabilitation Hosp., 140 F.3d 1405, 1412 (11th Cir. 1998). Accordingly, the Court will analyze Plaintiff's § 1981 claims against her individual supervisors in the same manner as her Title VII retaliation claims.

Initially, Plaintiff's claims against Dollar and Chapman are deficient on their face. Under both Title VII and Plaintiff's suggested framework, Plaintiff must establish that she engaged in protected activity prior to the retaliation. Compare Standard, 161 F.3d at 1328 and Doc. 137-9 at 22. In her Second Amended Complaint, Plaintiff asserts as to both defendants that they "failed to investigate Ms. Cisero's complaint(s)

of discrimination and retaliation" and "[Defendant] solicited complaints and/or letters from associates in an effort to justify terminating Ms. Cisero." (Doc. 82 ¶¶ 68, 71, 74, 77.) However, Plaintiff admitted in her deposition that she did not make any complaints until after she had left the Tallahassee store where Dollar and Chapman had supervised her. (Doc. 137-3 at 53.) Accordingly, neither Dollar nor Chapman could have failed to investigate complaints of race discrimination that Plaintiff had yet to make. Further, the record evidence submitted by Plaintiff pertains solely to the Jacksonville store and Defendant Rieli; Plaintiff has failed to substantiate her claims that Dollar or Chapman "solicited letters and/or complaints from associates." Therefore, Plaintiff's § 1981 claims against Dollar and Chapman must fail and those defendants will be granted summary judgment

The same cannot be said regarding Plaintiff's claim against Reili. The Court finds that Plaintiff's claim against Rieli survives summary judgment for the same reasons as articulated <u>supra</u> in regards to Count III against Wal-Mart.[7]

### d. Assault and Battery Claims

In Count V, Plaintiff alleges that Defendant Davis hit Plaintiff with a shopping cart on several occasions during which they were transporting heavy boxes throughout the department. (Doc. 82 at ¶¶ 31, 269; Doc. 134-3 at 86.) Initially,

---

[7] On February 20, 2008, the U.S. Supreme Court heard oral argument in the case of CBOCS West, Inc. v. Humphries, 474 F.3d 387 (7th Cir. 2007) cert. granted, 128 S. Ct. 30 (2007), addressing whether § 1981 provides a cause of action for retaliation. If Defendant finds that the Supreme Court's eventual decision has an adverse effect on Plaintiff's claims against Rieli under § 1981, the Court will reconsider this ruling at that time.

Plaintiff thought Davis was hitting Plaintiff accidentally; Davis would say "excuse me," and Plaintiff would respond "okay, fine." (Doc. 134-3 at 86.) However, she was later informed by a fellow associate that Davis was intentionally hitting Plaintiff with the shopping cart. (Id.) Plaintiff was not injured in these incidents.

Assault is defined as "an intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward another under such circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt." Lay v. Kremer, 411 So. 2d 1347, 1349 (Fla. Dist. Ct. App. 1982).

Plaintiff has failed to allege facts sufficient to establish that she was in "fear of imminent peril." Specifically, she has failed to specify whether she saw the shopping cart in motion and aimed in her direction so as to create a fear that the shopping cart would come into physical contact with her. See State v. White, 324 So.2d 630, 631 (Fla. 1975) (recognizing the awareness component in assault by rejecting the view that "criminal assault, unlike the tort of assault, does not require an awareness by the victim of imminent peril"). Furthermore, in her deposition, Plaintiff stated that during the times she was hit with the shopping cart, Davis would say "excuse me," and Plaintiff would respond "okay, fine." (Doc. 134-3 at 86.) Such dialogue negates any possible fear of imminent peril at the time of the alleged incidents.

Similarly, battery is defined as the "infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." Paul v. Holbrook, 696 So. 2d 1311, 1312 (Fla. Dist. Ct. App.

1982) (citing Sullivan v. Atl. Fed. Sav. & Loan Ass'n, 454 So. 2d 52, 54 (Fla. Dist. Ct. App. 1984; Chorak v. Naughton, 409 So. 2d 35, 39 (Fla. Dist. Ct. App. 1981)).

Plaintiff alleged in her complaint that Davis committed a battery against Plaintiff by intentionally hitting Plaintiff on several occasions with a shopping cart. (Doc. 86 at ¶¶ 31, 269.) However, Plaintiff failed to allege that being hit with a shopping cart was "harmful or offensive" to her or as measured by a reasonable person. Furthermore, according to the aforementioned testimony in her deposition, Plaintiff did not appear to be harmed or offended at the time of the alleged incident. At bottom, these claims are insufficiently pleaded and also insubstantial as a matter of law.

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. 131) is **GRANTED** on counts I, II and V of Plaintiff's Second Amended Complaint. (Doc. 82.)

2. Defendant's Motion for Summary Judgment (Doc. 131) is **DENIED** on Counts III and IV of Plaintiff's Second Amended Complaint. (Doc. 82.)

3. At the hearing, Plaintiff indicated that she intended to hire a lawyer if this case went to trial. It is now appropriate for Plaintiff to do so. Plaintiff should file a notice with the Court no later than **June 27, 2008** regarding her selection of a lawyer. Thereafter, a separate order shall issue setting this case for Final Pretrial Conference and Trial.

**5. If the parties desire a settlement conference with the Magistrate Judge before the trial, counsel may contact the assigned law clerk at (904) 549-1302 to make that request.**

DONE AND ORDERED at Jacksonville, Florida this 15th day May, 2008.

_____
TIMOTHY J. CORRIGAN
United States District Judge

jcd
Copies:
counsel of record
pro se party